**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

RENÉ DALLAS EDWARDS,

        Plaintiff,

    v.

LINDENWOLD POLICE DEPARTMENT,
et al.

        Defendants.

Civil Action No. 21-13076

**OPINION**

---

**APPEARANCES**:

RENE DALLAS EDWARDS
411 E GIBBSBORO RD
APT 110
LINDENWOLD, NJ 08021

    *Plaintiff appearing pro se*

**HILLMAN**, District Judge

    Presently before the Court are Plaintiff's Motions for
Recusal and Motions to Accept the Special Master Report and for
a Settlement Conference.  (ECF No. 4, 6, and 8).  In addition,
Plaintiff filed the Amended Complaint in response to the Court's
Order dated July 22, 2021.  (ECF No. 5).  Since Plaintiff is
proceeding in forma pauperis ("IFP"), the Court will screen the
Amended Complaint as required by 28 U.S.C. § 1915 to determine
whether the action is frivolous or malicious, or if the Amended
Complaint fails to comply with the proper pleading standards.

1

For the reasons explained below, the Court will (1) dismiss, in part, Plaintiff's Amended Complaint without prejudice and afford Plaintiff thirty (30) days to amend his Amended Complaint to cure the deficiencies addressed in this Opinion; and (2) deny without prejudice Plaintiff's Motions for Recusal and Motions to Accept the Special Master Report and for a Settlement Conference.

## BACKGROUND[1]

On or about February 8, 2021, at approximately 2:30 AM, Plaintiff was driving his vehicle to take out the trash in his apartment complex.  (ECF No. 5 at 2.)  At that same time, Chief Lieutenant Heleston ("Heleston"), in a marked Lindenwold police vehicle, pulled up behind Plaintiff as he began to travel through his apartment complex.  (Id. at 5 ¶7.)  During this time, Heleston did not turn on the flashing lights on his police vehicle.  (Id.)  At some point after, Heleston entered Plaintiff's apartment by knocking down Plaintiff's door.  (Id. at 5 ¶8.A.)  Heleston had no warrant to enter Plaintiff's apartment.  (Id.)  At the time, Plaintiff was not running from Defendant Heleston nor was Plaintiff committing a crime.  (Id.)

---

[1] The Court recites those facts alleged in the Amended Complaint. When screening a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

Plaintiff alleges that "[a]fter wrongfully battering Plaintiff and causing him to sustain severe and permanent injury" Heleston failed to assure Plaintiff received the appropriate medical treatment.  (Id. ¶9.)  Around this time, Patrolman McDowell ("McDowell") and Adam Ericco ("Ericco") were also present at the scene and failed to assure Plaintiff received a medical evaluation and treatment prior to leaving his apartment. (Id. ¶11.)

As a result of the foregoing, Plaintiff filed a complaint against Defendants Heleston, McDowell, and Errico (collectively "Individual Officers"), Michael P. McCarthy, Jr. ("McCarthy"),[2]

---

[2] The Amended Complaint asserts three allegations against McCarthy.  First, Plaintiff contends McCarthy "who bare, bare [sic] responsibility to file criminal charges on the plaintiff behalf of this misconduct of stoping [sic] black americans to pray on Sundays in their own home (New Jersey) Department as one of its executive branches."  (ECF No. 5 at 7 ¶ 14).   However, it is not McCarthy who decides whether to institute criminal charges and try a person. Zahir v. Mountcastle, No. 21-1023, 2021 U.S. Dist. LEXIS 56646, at *4 (E.D. Pa. Mar. 25, 2021)(quoting Lewis v. Jindal, 368 F. App'x 613, 614 (5th Cir. 2010)("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion.")).  Accordingly, this allegation cannot support a claim against McCarthy.  Second, Plaintiff alleges McCarthy's officer's "acts as described herein constitute a battery under the common law of New Jersey" and "willfully and wantonly or with gross negligence struck Plaintiff in the most disretfulway [sic] with all neighbors although Defendant Officer Mr. Michael P. McCarthy Jr. *CHIEF* knew, or should have known, that such conduct posed an unreasonable right of causing serious injury to Plaintiff." (ECF No. 5 at 9 ¶20, 10 ¶24.E.)  Plaintiff's drafting does not suggest McCarthy was actually present at the scene with Heleston, McDowell, and Errico.  Instead, these allegations seem

Borough of Lindenwold ("Lindenwold"), and Mayor Richard Roach, Jr. ("Mayor Roach")(collectively "Defendants) asserting the following five causes of action: (1) Count One – Use of Excessive Force; (2) Count Two – Reckless Indifference to Plaintiff's Serious Medical Needs; (3) Count Three – Monetary Claims against Lindenwold and Mayor Roach; (4) Count Four – Battery; and (5) Count Five – Claim for Gross Negligence or Willful and Wanton Misconduct.

## DISCUSSION

### A. Subject Matter Jurisdiction

The Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over the New Jersey state law claim pursuant to 28 U.S.C. § 1367(a).

### B. Legal Standards

#### a. Motion for Recusal

---

to be an attempt to hold McCarthy liable through supervisory liability.  Whether Plaintiff is attempting to hold Plaintiff directly liable for his own actions or the actions of his subordinate officers does not need to be resolved at this time. This is because under either theory Plaintiff fails to state a claim against McCarthy given these two additional allegations are merely conclusory allegations.  For this reason, the Court will dismiss without prejudice Plaintiff's Amended Complaint against McCarthy.  Plaintiff will be afforded thirty (30) days to amend his Amended Complaint to include factual allegations that demonstrate McCarthy was present at the scene and if so, his alleged unlawful actions at the scene or include factual allegations that demonstrate McCarthy may be held liable through a supervisory liability theory.

There are two principal statutes addressing recusal of a federal judge, 28 U.S.C. §§ 455 and 144.  Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The Third Circuit has held that "[t]he test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned."  Allen v. Parkland Sch. Dist., 230 F. App'x 189, 193 (3d Cir. 2007) (quoting In re Kensington Int'l Ltd., 368 F.3d 289, 301 (3d Cir. 2003)).

Similarly, under 28 U.S.C. § 144, recusal must occur "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144. A "substantial burden is imposed on the party filing an affidavit of prejudice to demonstrate that the judge is not impartial."  Ali v. United States, No. 14-7723 (NLH), 2015 U.S. Dist. LEXIS 145360, at *2 (D.N.J. Oct. 27, 2015) (quoting Frolow v. Wilson Sporting Goods Co., No. 05-04813, 2011 U.S. Dist. LEXIS 38098, at *5 (D.N.J. Apr. 7, 2011) (citation omitted); Kilkeary v. United States, No. 12-2781, 2015 U.S. Dist. LEXIS 78822, at *8 (D.N.J. June 18, 2015)).

**b. Screening Complaints Filed IFP Pursuant to Section**

**1915**

Although § 1915 refers to "prisoners," federal courts apply § 1915 to non-prisoner IFP applications.  See Hickson v. Mauro, No. 11-6304, 2011 U.S. Dist. LEXIS 137260, at *1 (D.N.J. Nov. 30, 2011) (citing Lister v. Dept of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005)); Lister, 408 F.3d at 1312 ("Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners.").  Once IFP status has been granted, a court must follow the screening provisions of the IFP statute.  The screening provisions of the IFP statute require a federal court to dismiss an action sua sponte if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards.  See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013); Martin v. U.S. Dep't of Homeland Sec., No. 17-3129, 2017 U.S. Dist. LEXIS 140747, at *1 (D.N.J. Aug. 30, 2017) ("Federal law requires this Court to screen Plaintiff's Complaint for sua sponte dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.").

As indicated, this Court must follow the Rule 12(b)(6) standard in considering a pro se complaint.  Pro se complaints must be construed liberally, and all reasonable latitude must be

afforded the <u>pro</u> <u>se</u> litigant.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976).  But, <u>pro</u> <u>se</u> litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure."  <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); <u>Sykes v. Blockbuster Video</u>, 205 F. App'x 961, 963 (3d Cir. 2006) (finding that <u>pro</u> <u>se</u> plaintiffs are expected to comply with the Federal Rules of Civil Procedure).

When screening a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...."  <u>Bell Atl. Corp. v. Twombly</u>,

7

550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' ...."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal ... provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

### C. Plaintiff's Motions

Plaintiff's fails to cite the bases for his Motions for Recusal.  For this reason, the Court will consider both 28 U.S.C. §§ 144 and 455(a).

The Court first finds Plaintiff's Motions for Recusal, to

the extent based on 28 U.S.C. § 144, procedurally defective. Under 28 U.S.C. § 144, Plaintiff bears the burden of filing a "sufficient affidavit" demonstrating that this Court has a "personal bias or prejudice against him or in favor of any adverse party." Plaintiff failed to file any affidavit as required by § 144.

The Court further finds neither § 144 nor § 455 would warrant the Court to grant Plaintiff's Motions for Recusal anyway. Plaintiff explains recusal is warranted due to "discrimination and refusal [sic] to see me or speak to me due to my race, last appointed attorney said he dislike [sic] African/Spanish people on his own personal reason." (ECF No. 4 at 1). Plaintiff's more recent filings echo these claims, arguing that recusal is warranted because the Court has not afforded him oral arguments in prior cases, and he is being discriminated against here on the basis of his race, sexual orientation, age, and religion. See, e.g., Plaintiff's Motion for Recusal (ECF No. 8 ay 1) (claiming "discrimination on (4-counts) – refusal to honor any 'court hearings) [sic] in my civil case prior and refuse to hold any person 'liable for rape me [sic] for 7-times"); id. at 1-2 (claiming discrimination because the Court "refuse/hearings of past and present cases . . . [because the judge] only want to see *black African Americans in his court only under 'criminal cases' states that's how he

9

make his money buy [sic] keeping the prison over (80-percent in black people)"); id. at 2 (claiming discrimination because "I have to fight to get in a court room 'only' due to it's a civil case.  This judge has violated my rights, I do not 'trust' him nor Im [sic] fully aware of his grudge against me due to *several times I wrote him up*"); Plaintiff's Letter in Support of the Motions for Recusal (ECF No. 10 at 1) (claiming the case has not been allowed to proceed due to his "race, color, or his religion or senior & handicap or gay 'forced' status"); id. at 1-2 (claiming recusal is warranted as: (1) "this judge has been placed down as a **defendant** in amended-complaint;"[3] (2) "this current judge will purposly [sic] *delay* the process of this case due to my color;" (3) "this current judge has a 'pending civil case against him of $100-million U.S. dollars;"[4] (4) "Plaintiff must take 24-pills a day due to judge refusal to hear

---

[3] The proposed Amended Complaint, ECF No. 5, does not name the undersigned as a defendant.  The Court is at a loss as to how or why Plaintiff reached this conclusion.

[4] This averment is moot.  As noted in the Court's February 24, 2022 Opinion and Order in Edwards v. Hillman, No. 2:21-cv-20720-JMV-CLW, 2022 WL 597515, at **2-7 (D.N.J. Feb. 23, 2022), wherein "Plaintiff appears to challenge Judge Noel L. Hillman and Judge Anne E. Thompson's decisions in multiple other matters brought by Plaintiff . . . alleg[ing] that Judge Hillman denied Plaintiff's requests for hearings because of his race, sexual status, and religion," the Court dismissed Plaintiff's complaint, in part with prejudice, holding "the claims against Judge Hillman and Judge Thompson are dismissed pursuant to the doctrine of judicial immunity."

his case;" and (5) "Plaintiff has no/feelings in his right hand and left hand, due to this judge would not allow proper hearing to stop the unlawful acts against him."); Plaintiff's Letter in Support of the Motions for Recusal (ECF No. 12 at 1) (claiming recusal is warranted because he was denied "court hearings from you and refuse to have in in [sic] court or video hearings due to his color, race, sexual status, of being raped 7-times and beaten with combination locks, which you allowed and provided to the inmates"). However, "[t]h[ese] claim[s], which [are] speculative and conclusory, do[] not warrant recusal." In re Onishi, No. 21-2490, 2021 U.S. App. LEXIS 24514, at *3 (3d Cir. Aug. 17, 2021); see also Brown v. United States, 823 Fed. App'x 97, 103-14 (3d Cir. July 30, 2020)(citations and quotations omitted)("[A] judge's recusal is not required on the basis of unsupported or highly tenuous speculation"); In re Burnett, 740 Fed. App'x 235, 236 (3d Cir. Oct. 26, 2018)(citations and quotations omitted)("[R]ecusal is not required on the grounds of unsupported, irrational, or highly tenuous speculation"). Plaintiff fails to include any factual support for his allegations that would warrant recusal. Thus, the Court will deny Plaintiff's motions to the extent he seeks recusal.

Throughout Plaintiff's motions and letters, he also seeks an order from the Court accepting the Report of the Special Master and directing the parties to engage in a settlement

11

conference.  The Court first rejects Plaintiff's request for the Court to accept the "Report of the Special Master."  Plaintiff fails to provide the Court with any Special Master Report or offer any explanation of what report, investigation, or court proceeding he may be referring to.  Accordingly, the Court is unaware of what report Plaintiff seeks the Court's approval for and for this reason, the Court will deny Plaintiff's motions to the extent he seeks the Court to accept the Report of the Special Master.

As detailed below, Plaintiff's Section 1983 claim against Heleston, Errico, and McDowell for a warrantless entry, battery claim against Heleston, and gross negligence claim against Heleston, Errico, and McDowell have survived the Court's screening pursuant to Section 1915.

If Plaintiff wishes to pursue a settlement conference with such Defendants, then Plaintiff may seek to arrange such a conference under the direction of the Magistrate Judge assigned to this matter after he has effected service on the Defendants. Because no defendants have been served his application is not yet ripe and will be denied without prejudice.

D.   **IFP Screening Pursuant to § 1915**

   a. **Plaintiff's § 1983 Claims against the Individual Officers**

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory ... subjects, or causes
> to be subjected, any citizen of the United
> States or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for redress
> . . . .

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). "Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a 'right or privileges secured by the Constitution or the laws of the United States' and (2) that plaintiff was deprived of his rights by a person acting under the color of state law." Rodriguez v. N.J.,

13

No. 18-11166, 2021 U.S. Dist. LEXIS 9356, at *13 (D.N.J. Jan. 19, 2021) (quoting Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989)).

Plaintiff first asserts an excessive force claim. However, the allegations of Count I suggests Plaintiff is alleging Fourth Amendment violations based upon the theories of the warrantless entry into his home and excessive force.[5] The Court will first analyze whether Plaintiff has sufficiently stated a Section 1983 claim based upon a Fourth Amendment violation for a warrantless entry and then analyze whether Plaintiff has sufficiently stated a Section 1983 claim based upon a Fourth Amendment Violation for excessive force.

### i. Warrantless Entry into Plaintiff's Apartment

"The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures." United States v. Sharpe, 470 U.S. 675, 682 (1985). "Searches of a home without a warrant are presumptively unreasonable, though the warrant requirement is

---

[5] Plaintiff asserts a separate cause of action for reckless indifference to Plaintiff's serious medical needs. In doing so, Plaintiff merely repeats the same allegations that underly Plaintiff's excessive force claim. This Court recognizes the abundance of case law regarding the denial of medical needs in the prison context; however, Plaintiff is neither an inmate nor a pretrial detainee. The Court will consider the refusal to provide medical assistance in its analysis surrounding Plaintiff's excessive force claim. Accordingly, Count II is dismissed with prejudice.

subject to carefully defined exceptions." Ray v. Twp. of
Warren, 626 F.3d 170, 174 (3d Cir. 2010).

The Court finds that Plaintiff has plausibly alleged a
Section 1983 claim against the Individual Officers for a
warrantless entry.  First, "acts of a state or local employee in
[his] official capacity will generally be found to have occurred
under color of state law." Barna v. City of Perth Amboy, 42
F.3d 809, 816 (3d Cir. 1994).  Here, Plaintiff alleges the
Individual Officers entered his apartment and, therefore,
plausibly alleges conduct under color of state law.  Second,
Plaintiff provides sufficient facts that Defendant Heleston,
without a warrant, broke down Plaintiff's door and then
proceeded to enter his apartment.  In addition, Defendants
Errico and McDowell entered his apartment without a warrant.
Because searches of an apartment without a warrant are
presumptively unreasonable, Ray, 626 F.3d at 174, and because
the well-pleaded factual allegations of the Amended Complaint,
taken as true, demonstrate the absence of an exception to the
warrant requirement, the Court finds that Plaintiff has
plausibly alleged a violation of the Fourth Amendment.
Accordingly, Plaintiff has plausibly alleged a Section 1983
claim under the theory of a warrantless entry into his apartment
against the Individual Officers.

    **ii.  Excessive Force**

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Brower v. County of Inyo, 489 U.S. 593, 599 (1989), cited in Lamont v. New Jersey, 637 F.3d 177, 182-83 (3d Cir. 2011). See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  Clearly, here, there is no question that Plaintiff has adequately alleged that a seizure occurred.

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in

16

Graham v. Connor, 490 U.S. 386, 396 (989) and Scott v. Harris,
550 U.S. 372, 383 (2007).  Proper application of this objective
reasonableness standard "requires careful attention to the facts
and circumstances of each particular case, including the
severity of the crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade
arrest by flight."  Graham v. Connor, 490 U.S. at 396; quoted in
Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir.
1995).  Other factors to be considered include "'the duration of
the [officer's] action, whether the action takes place in the
context of effecting an arrest, the possibility that the suspect
may be armed, and the number of persons with whom the police
officers must contend at one time.'"  Couden v. Duffy, 446 F.3d
483, 497 (3d Cir. 2006) (citations omitted).  Ultimately, "the
question is whether the officers' actions are 'objectively
reasonable' in light of the facts and circumstances confronting
them, without regard to their underlying intent or motivation."
Graham, 490 U.S. at 397.

Applying this to the pleadings, "[h]ere, Plaintiff has
simply alleged in conclusory fashion that [Defendant Heleston
battered] him and used excessive force against him.  This Court
is not bound to accept Plaintiff's characterization of the
[Individual Officers'] conduct as excessive."  Stora v. Brady,

No. 12-5131 (NLH), 2014 U.S. Dist. LEXIS 146032, at *10 (D.N.J. Oct. 10, 2014).  Plaintiff has failed to describe the nature of the force used against him for the Court to determine whether the Individual Officers used excessive force against him when they entered his home.  Plaintiff's excessive force claim is therefore dismissed without prejudice.

The Court will afford Plaintiff thirty (30) days to amend his complaint to includes sufficient allegations detailing the forced used by each Individual Officer to support his excessive force claim.  Laoye v. Doe, No. 20-1149, 2021 U.S. Dist. LEXIS 148331, at *8-9 (D.N.J. Aug. 4, 2021)(screening a pro se plaintiff's complaint pursuant to Section 1915 and dismissing plaintiff's excessive force claim without prejudice because plaintiff "does not detail what force was used against him, nor does he provide any context or detail about the incident in question" and "[p]laintiff has thus failed to plead facts which would indicate that the use of force in question was unreasonable, and [p]laintiff therefore fails to state a plausible claim for relief"); Riggins v. Banos, No. 18-12877, 2019 U.S. Dist. LEXIS 72481, at *9 (D.N.J. Apr. 30, 2019)(screening a pro se plaintiff's complaint pursuant to Section 1915 and dismissing plaintiff's excessive force claim without prejudice because plaintiff "simply makes the conclusory allegation that police officers 'physically assaulted plaintiff

18

despite plaintiff being in full submission on his stomach on the upper bathroom common facility floor and the assault continued after plaintiff had been handcuffed'" and "[w]ithout any facts identifying the degree of physical force allegedly used upon [plaintiff], he fails to state a plausible claim for excessive force").

### b. Plaintiff's Monell claim against Lindenwold

It is well established that local government units cannot be held liable via respondeat superior for the constitutional violations of their employees "unless action pursuant to official municipal policy of some nature caused a constitutional tort" to be committed by such employees.  Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978).  To plead a municipality liability claim, a plaintiff must allege that "a government's policy or custom ... inflict[ed] the injury" in question.  Id. at 694.  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  Bielevicz v.

Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

The Third Circuit has held that a Monell claim may also be premised on a municipality's failure to train, supervise, and discipline.  To plead such a claim, a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'"  Estate of Roman v. City of Newark, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting Brown v. Muhlenberg Township, 269 F.3d 205, 215 (3d Cir. 2001)).  Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Id. (quoting Doe v. Luzerne County, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).  Finally, conclusory recitations of the elements of a Monell claim are insufficient.  See Benjamin v. E. Orange Police Dep't, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (dismissing the claim against the city because the plaintiff failed to plead adequate facts demonstrating the existence of a policy or custom).

Plaintiff provides only conclusory allegations as to the existence of a policy, practice, and custom of Lindenwold.  It is well-established that conclusory allegations as to the

existence of a policy or practice is insufficient to provide a
valid basis for municipal liability.  <u>See</u>, <u>e.g.</u>, <u>Malat v.
Borough of Magnolia</u>, No. 19-14841 (NLH), 2020 U.S. Dist. LEXIS
88519, at *1 (D.N.J. May 20, 2020)(dismissing a <u>pro</u> <u>se</u>
plaintiff's municipality claims where the plaintiff claimed
"that the Borough of Magnolia fostered an unconstitutional
policy that 'permits and tolerates illegal conduct, including
harassment, excessive use of police power, tortuous interference
with business relations, intentional infliction of distress, and
illegal discrimination,'" because "such conclusory allegations
do not satisfy the applicable pleading standards for
[plaintiff's municipal liability] claim[].");  <u>Bragg v. Tuccillo</u>,
No. 16-8628, 2017 U.S. Dist. LEXIS 16168, at *6 (D.N.J. Feb. 6,
2017) (dismissing a <u>pro</u> <u>se</u> plaintiff's municipal liability
claims because "[p]laintiff identifie[d] no policy or practice
which resulted in his alleged mistreatment by the various
officers and instead he provid[ed] only a conclusory allegation
as to the existence of a policy or practice"); <u>Schweizer v.
Middle Twp. Mayor & Governing Body</u>, No. 17-960 (NLH),2018 U.S.
Dist. LEXIS 71637, at *13 (D.N.J. Apr. 30, 2018) ("As in <u>Iqbal</u>,
and also in <u>Bard</u> and <u>Zampetis</u>, Plaintiff's conclusory contention
that an infirm policy, or custom, or training practice by Middle
Township caused his injuries is insufficient to properly plead a
viable Monell claim. In addition to identifying the relevant

policymakers and their specific participation in the alleged
violations, Plaintiff is required to provide facts - not simply
regurgitate all the legal bases for liability under Monell - to
support his contentions and adequately plead his claims against
the municipality.").

Count III against Lindenwold will be dismissed without
prejudice, and Plaintiff will be afforded thirty (30) days to
file an amended complaint that cures the above deficiencies.
See Fletcher Harlee Corp. v. Pote Concrete Contractors, Inc.,
482 F.3d 247, 251 (3d Cir. 2007) (stating that Third Circuit
case law "supports the notion that in civil rights cases
district courts must offer amendment irrespective of whether it
is requested when dismissing a case for failure to state a claim
unless doing so would be inequitable or futile").

### c. Plaintiff's supervisory liability claim against Mayor Roach

Plaintiff appears to seek liability against Mayor Roach in
his supervisory capacity as mayor of Lindenwold.  Generally,
government officials are not liable for the unconstitutional
conduct of their subordinates under a theory of respondeat
superior.  See Iqbal, 556 U.S. at 676; Monell, 436 U.S. at 692;
Robertson v. Sichel, 127 U.S. 507, 515-16 (1888) ("A public
officer or agent is not responsible for the misfeasances or
position wrongs, or for the nonfeasances, or negligences, or

omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

Instead, there are ordinarily only two ways in which supervisors may be liable for the unconstitutional acts of their subordinates.  First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).  Plaintiffs may show deliberate indifference through facts that indicate "a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's," or "that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and failure of supervisory officials to respond will alone' support the finding that the two-part test is met." Beers-Capitol v. Whetzel, 256 F.3d 120, 136-37 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989)).

Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates'

23

unconstitutional conduct." Estate of Moore v. Cumberland Cty.,
No. 17-2839, 2018 U.S. Dist. LEXIS 37814, at *11 (D.N.J. Mar. 8,
2018). Moreover, "claims alleging a failure to train, failure
to discipline, or failure to supervise are a subset of . . .
policy or practice liability." Womack v. Moleins, No. 10-2932,
2015 U.S. Dist. LEXIS 11107, at *7 (D.N.J. Jan. 30, 2015).

Here, regarding Mayor Roach, Plaintiff fails to allege
adequate facts in his complaint that demonstrate he may satisfy
either approach to hold Mayor Roach liable. In fact, Count III,
which Plaintiff pleads against both Lindenwold and Mayor Roach,
only includes allegations specific to Lindenwold. Plaintiff's
Amended Complaint includes only the following three factual
allegation specific to Mayor Roach at the end of the Amended
Complaint: (1) Mayor Roach is liable "to all action done in his
'area' unnwarranted [sic] action 'done' by appointed state
workers of" Lindenwold; (2) "answer violation of the following:
Misconduct by corparate [sic] official – mayor 2c:21-9-1-he
purposly [sic] or knowing [sic] use, controls, of 'cover-up'
Lindenwold police reports of misconduct for furtherances [sic]
for promotion of officer criminal objects;" and (3) "answer
violation of making dividend except in the manner provided by
law of (the named defendants) in this case state employees has
several complaints by other citizens, of misconduct actions and
should be remove [sic] but you are illegally keeping them."

(ECF No. 5 at 11.)   As currently pled, these allegations alone are insufficient to state a plausible claim against Mayor Roach for supervisory liability or any cause of action.

Accordingly, the Court will dismiss without prejudice Count III of Plaintiff's Amended Complaint against Mayor Roach. Plaintiff will be afforded thirty (30) days to amend his Amended Complaint to cure these deficiencies.   See Fletcher Harlee Corp., 482 F.3d at 251 (3d Cir. 2007) (stating that Third Circuit case law "supports the notion that in civil rights cases district courts must offer amendment irrespective of whether it is requested when dismissing a case for failure to state a claim unless doing so would be inequitable or futile").

### d. Plaintiff's tort claims against the Individual Officers

#### i. Battery

"The tort of battery rests upon a nonconsensual touching." Valles v. Cumberland County, No. 16-4757 (NLH), 2020 U.S. Dist. LEXIS 101300, at *5 (D.N.J. 16-4757)(citing Leang v. Jersey City Bd. of Educ., 198 N.J. 557 (2009).   The Amended Complaint alleges that Defendant Heleston battered Plaintiff, who sustained severe and permanent injuries.   (ECF No. 5 at 6).   The Amended Complaints fails to allege the other Individual Officers touched Plaintiff without his consent.   Accordingly, the Court will dismiss without prejudice Plaintiff's battery claim against

25

Defendant McDowell and Defendant Errico.  Plaintiff will be
afforded thirty (30) days to include allegations to cure these
deficiencies.[6]

### ii. Gross Negligence

For a finding of negligence under New Jersey law, the
plaintiff must establish: (1) a duty of care owed by defendant
to plaintiff; (2) a breach of that duty by defendant; and (3) an
injury to plaintiff proximately caused by defendant's breach.
Smith v. Kroesen, 9 F. Supp. 3d 439, 442-43 (D.N.J. 2014)(citing
Endre v. Arnold, 300 N.J. Super. 136, 142 (App. Div. 1997)).
With regard to a claim of gross negligence, "the difference
between 'gross' and 'ordinary' negligence is one of degree
rather than of quality.  Id.  "Gross negligence refers to
behavior which constitutes indifference to consequences." Id.

"Police officers have 'a duty to act reasonably, and, in
the context of effectuating an arrest, they have a duty to
exercise 'reasonable care to preserve the life, health, and

---

[6] This Court recognizes if the Individual Officers were
attempting to arrest Plaintiff, then the Individual Officers
would be liable for battery only if the force was excessive.
Sanders v. Jersey City, No. 18-1057, 2021 U.S. Dist. LEXIS
78681, at *55 (D.N.J. Apr. 23, 2021)(citing Panarello v. City of
Vineland, 160 F. Supp. 3d 734, 767 (D.N.J. 2016)).  However,
Plaintiff's Amended Complaint does not suggest the actions of
Defendant Heleston occurred during an attempt to arrest
Plaintiff.  For this reason, the Court finds that, accepting
Plaintiff's allegations as true, Defendant Heleston may be
liable for battery even if he did not use excessive force.

safety of the person in custody.'"  Widmaier v. City of Newark, No. 16-2533, 2017 U.S. Dist. LEXIS 109453, at *23 (D.N.J. July 14, 2017); (citing Roccisano v. Township of Franklin, No. 11-6558, 2013 U.S. Dist. LEXIS 97526 (D.N.J. Jul. 12, 2013) (quoting Del Tufo v. Township of Old Bridge, 147 N.J. 90, 101 (1996); Damiani v. West Deptford Township, No. 07-2884, 2008 U.S. Dist. LEXIS 17581, (D.N.J. Mar. 7, 2008) (refusing to dismiss a negligence claim where plaintiff alleged that officers physically pulled her from a car without cause or explanation)).

Accepting the factual allegations as true, Defendant Heleston broke through Plaintiff's door, the Individual Officers entered Plaintiff's property without a warrant, Defendant Heleston injured Plaintiff at some point, and the Officers left Plaintiff in need of medical attention without calling an ambulance for help or fixing Plaintiff's door.  Plaintiff alleges all these actions and inactions occurred for no lawful reason at all.  The Court finds this is sufficient to demonstrate the Individual Officers breached their duty to act reasonably with Plaintiff.  Moreover, as a result of the Individual Officers' previous actions and inactions, Plaintiff suffered severe and permanent injuries.  Accordingly, the Court will allow Plaintiff's gross negligence claim to proceed against the Individual Officers.

Plaintiff should note that when an amended complaint is

filed, the previous complaint no longer performs any function in the case and cannot be utilized to cure defects in the complaint, unless the relevant portion is specifically incorporated in the new complaint.  6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted).  The amended complaint may adopt some or all of the allegations in the previous complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

## CONCLUSION

For the reasons stated above, the Court will (1) dismiss, in part, Plaintiff's Amended Complaint without prejudice and afford Plaintiff thirty (30) days to file a Second Amended Complaint consistent with this Opinion; and (2) deny without prejudice Plaintiff's Motions for Recusal and Motions to Accept the Special Master Report and For a Settlement Conference. Plaintiff shall be afforded thirty (30) days to amend his Amended Complaint to cure the deficiencies detailed in this Opinion.

An appropriate Order will be entered.


Date: March 3, 2022               s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.